IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| THE ARMY RETIREMENT RESIDENCE FOUNDATION– SAN ANTONIO, INC. D/B/A ARMY RESIDENCE COMMUNITY §§§§§ | |
| VS. §§ | CASE NO. 5:17-CV-874 |
| PHILADELPHIA INDEMNITY INSURANCE COMPANY, ET AL. §§ | |

*On Removal from:*

CAUSE NO. 2017-CI-16586

| | |
|---|---|
| THE ARMY RETIREMENT RESIDENCE FOUNDATION– SAN ANTONIO, INC. D/B/A ARMY RESIDENCE COMMUNITY, §§§§§ | IN THE DISTRICT COURT |
| VS. §§ | BEXAR COUNTY, TEXAS |
| PHILADELPHIA INDEMNITY INSURANCE COMPANY, ET AL. §§ | 438TH JUDICIAL DISTRICT |

EXHIBIT 6

ALL DOCUMENTS FILED IN STATE COURT

| Index | | |
|---|---|---|
| | Document | Filed |
| A | Plaintiff's Original Petition | 8/30/17 |
| B | Defendant Philadelphia Indemnity Insurance Company's Original Answer | 9/8/17 |
| C | Defendant Philadelphia Indemnity Insurance Company's Notice of Removal to Federal Court | 9/8/17 |
| D | Plaintiff's Special Exceptions to Defendant Philadelphia Indemnity Insurance Company's Original Answer | 9/8/17 |

ALL DOCUMENTS FILED IN STATE COURT

# Exhibit 4A

FILED
8/30/2017 6:16 PM
Donna Kay McKinney
Bexar County District Clerk
Accepted By: Krystal Gonzalez

3 cit cml sac1

CAUSE NO. **2017CI16586**
_____

| | | |
|---|---|---|
| THE ARMY RETIREMENT RESIDENCE | § | IN THE DISTRICT COURT |
| FOUNDATION – SAN ANTONIO, INC. | § | |
| D/B/A ARMY RESIDENCE COMMUNITY | § | |
| | § | |
| v. | § | |
| | § | |
| | § | 438 JUDICIAL DISTRICT |
| PHILADELPHIA INDEMNITY | § | |
| INSURANCE COMPANY, MICHAEL DEAN | § | |
| HARGRAVE AND CATTO & CATTO, INC. | § | |
| D/B/A CATTO & CATTO, LLP D/B/A | § | |
| CATTO & CATTO BENEFITS GROUP, LLP | § | |
| D/B/A CATTO & CATTO | § | BEXAR COUNTY, TEXAS |

## PLAINTIFF'S ORIGINAL PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

THE ARMY RETIREMENT RESIDENCE FOUNDATION – SAN ANTONIO, INC. D/B/A ARMY RESIDENCE COMMUNITY files this Original Petition against Defendants PHILADELPHIA INDEMNITY INSURANCE COMPANY ("Philadelphia"), MICAEL DEAN HARGRAVE ("Hargrave" or "Adjuster") and CATTO & CATTO, INC. D/B/A CATTO & CATTO, LLP D/B/A CATTO & CATTO BENEFITS GROUP, LLP D/B/A CATTO & CATTO, ("Catto & Catto") and for causes of action would respectfully show the Court the following:

### I. DISCOVERY LEVEL

Pursuant to rule 190 of the Texas Rules of Civil Procedure, Plaintiff intends to conduct discovery under Level 3.

### II. VENUE

Venue is appropriate in Bexar County, Texas because all or part of the conduct giving rise to the causes of action were committed in Bexar County, Texas, a contract was entered into in

Bexar County, Texas, and the Plaintiff and property which is the subject of this suit are located in Bexar County, Texas.

### III. PARTIES

Plaintiff is a Nonprofit Corporation with its principle place of business in Bexar County, Texas.

Defendant PHILADELPHIA is in the business of insurance in the State of Texas. The insurance business done by PHILADELPHIA in Texas includes, but is not limited to, the following:

- The making and issuing of contracts of insurance with the Plaintiff;

- The taking or receiving of application for insurance, including the Plaintiff's application for insurance;

- The receiving or collection of premiums, commissions, membership fees, assessments, dues or other consideration for any insurance or any part thereof, including any such consideration or payments from the Plaintiff; and

- The issuance or delivery of contracts of insurance to residents of this state or a person authorized to do business in this state, including the Plaintiff.

Defendant, PHILADELPHIA INDEMNITY INSURANCE COMPANY, a foreign insurance carrier, organized and existing under the laws of the State of Pennsylvania may be served with process by serving it registered agent for service of process C T Corporation System 1999 Bryan Street Suite 900 Dallas, Texas 75201-3136 333. *Plaintiff requests that citation be issued and that service be made by certified mail, return receipt requested.*

Defendant, MICHAEL DEAN HARGRAVE is an Adjuster and he may be cited with process at 2220 Winter Sunday Way Arlington, Texas 76012. Michael Dean Hargrave engages in the business of insurance in Texas. *Plaintiff requests that citation be issued and that service be made by certified mail, return receipt requested.*

Defendant, CATTO & CATTO, Inc. D/B/A CATTO & CATTO, LLP D/B/A CATTO & CATTO BENEFITS GROUP, LLP D/B/A CATTO & CATTO, a for profit corporation incorporated in the State of Texas with its principle place of business in Bexar County Texas is an insurance agency that engages in the business of insurance in Texas. CATTO & CATTO, Inc. D/B/A CATTO & CATTO, LLP D/B/A CATTO & CATTO BENEFITS GROUP, LLP D/B/A CATTO & CATTO may be cited with process by serving its registered agent for service of process, James L Hayne, Jr. at 217 E. Houston Street, Suite 100 San Antonio, Texas 78205. *Plaintiff requests that citation be issued and that service be made by certified mail, return receipt requested.*

## IV. NATURE OF THE CASE; RELIEF SOUGHT

This is a first-party insurance case stemming from extensive damage to Plaintiff's Property caused by a storm on or about April 12, 2016. Plaintiff seeks a declaration that its property and consequential losses are covered by an insurance policy issued by Philadelphia Indemnity Insurance Company. Plaintiff seeks damages for breach of contract, violations of the Texas Insurance Code, common law bad faith, civil conspiracy and breach of fiduciary duty. Plaintiff also seeks its attorney's fees, statutory penalties, costs of court and pre- and post-judgment interest. As required by Rule 47 of the Texas Rules of Civil Procedure, Plaintiff seeks monetary relief over $1,000,000.

## V. BACKGROUND FACTS

The Army Residence Community serves approximately seven hundred and fifty retired commissioned officers of United States Military in its mission to provide access to housing, medical and other community services for its residents (the "Community"). The Community serves the best this country has to offer and yet, despite this fact, the Defendants have undertaken

3

to deliberately underpay the covered losses which will ultimately impact these fine men and women. The Community is covered by a policy of insurance, numbered PHPK1359399, which the Insurance Defendant sold to Plaintiff (the "Policy"). The Policy covered Plaintiff's property against loss by hail, wind and water damage, among other perils.

Plaintiff has performed all conditions precedent to its recovery under the Policy. Plaintiff gave timely notice to the carrier.

The carrier assigned the claim to Hargrave, among others, to investigate, report on and adjust the loss.

Plaintiff provided information to the Adjuster and opportunities for the Adjuster to inspect the Community.

The Insurance Defendant failed and refused to pay Plaintiff in accordance with its promises under the Policy.

Plaintiff has suffered property damage which has not been paid, even though the amounts are well-established and have been provided to the Insurance Defendant and its Adjuster.

The Insurance Defendant has failed to make an attempt to settle Plaintiff's claim in a fair manner, although its liability to the Plaintiff under the Policy is without dispute. This conduct is a violation of Tex. Ins. Code Sec. 541.060(a)(2)(A).

The Insurance Defendant and its Adjuster have failed to explain the reasons for its non-payment under the policy. The Insurance Defendant and its Adjuster have failed to issue payment without any explanation why full payment was not being made. The Insurance Defendant and its Adjuster did not communicate that any future payments would be forthcoming to pay the entire losses covered under the Policy. This conduct violates Tex. Ins. Code Sec. 541.060(a)(3).

The Insurance Defendant and its Adjuster have failed to affirm or deny coverage within a reasonable time. Plaintiff did not receive timely indication of acceptance or rejection regarding the full and entire loss in writing from the Insurance Defendant or the Adjuster in a timely manner. This conduct is a violation of Tex. Ins. Code Sec. 541.060(a)(4).

The Insurance Defendant refused to fully compensate Plaintiff under the terms of the Policy and the adjusting agency and the Adjuster failed to conduct a reasonable investigation. The adjusting agency and the Adjuster performed an inadequate and outcome-oriented investigation of Plaintiff's loss which resulted in an unfair, biased and inequitable evaluation of Plaintiff's losses, with the purpose to create a false pretext for Philadelphia to underpay the covered loss. This conduct is a violation of Tex. Ins. Code Sec. 541.060(a)(7).

The Insurance Defendant and the Adjuster failed to meet their obligations under the Texas Insurance Code regarding timely acknowledging Plaintiff's losses, beginning investigation of Plaintiff's claim, and requesting all information reasonably necessary to investigate Plaintiff's claim within the time period mandated by statute. This conduct is a violation of Tex. Ins. Code Sec. 542.055.

The Insurance Defendant and the Adjuster failed to accept or deny Plaintiff's full and entire claim within the time period mandated by statute. This conduct is a violation of Tex. Ins. Code Sec. 542.056.

The Insurance Defendant Adjuster forced Plaintiff to file this suit by paying substantially less than the amount of covered damages.  This conduct violates Texas Insurance Code § 542.003(b)(5) and 28 TAC § 21.203(5).

The Insurance Defendant failed to meet its obligation under the Texas Insurance Code regarding payment of the claim without delay. This conduct is a violation of Tex. Ins. Code Sec. 542.058.

## VI. CLAIMS AGAINST PHILADELPHIA INDEMNITY INSURANCE COMPANY

**Declaratory Judgment.** Plaintiff re-alleges the foregoing paragraphs. Pursuant to the Texas Declaratory Judgment Act, Plaintiff is entitled to a declaration that the Policy provides coverage for the cost to repair the damaged property, less only a deductible, among other things. In the alternative, Plaintiff asserts that the Policy is ambiguous and must be interpreted in favor of coverage and against the Insurance Defendant.

**Breach of Contract.** Plaintiff re-alleges the foregoing paragraphs. The acts and omissions of Philadelphia and its agents constitute a breach and/or anticipatory breach of the Philadelphia's contract with Plaintiff. Plaintiff has satisfied all conditions precedent to the fulfillment of its contractual demands. Accordingly, additionally or in the alternative, Plaintiff brings an action for breach of contract against the Insurance Defendant pursuant to Texas statutory and common law, including Chapter 38 of the Texas Civil Practice and Remedies Code, and seek all of its damages for such breach, including actual damages, consequential damages, attorneys' fees, prejudgment interest, other litigation expenses and costs of court.

**Violations of the Texas Insurance Code.** Plaintiff re-alleges the foregoing paragraphs. At all pertinent times, the Insurance Defendant was engaged in the business of insurance as defined by the Texas Insurance Code. The acts and omissions of the Insurance Defendant and its agents constitute one or more violations of the Texas Insurance Code. More specifically, the Insurance Defendant has, among other violations, violated the following provisions of the Code:

6

1. Insurance Code chapter 542, the Prompt Payment Act.

2. Insurance Code § 542.003(b)(5) and 28 TAC § 21.203(5).

3. Insurance Code chapter 541, section 541.060 by, among other things:

- misrepresenting one or more material facts and/or policy provisions relating to coverage;

- failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim with respect to which their liability has become reasonably clear;

- failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim under one portion of a policy with respect to which liability has become reasonably clear in order to influence Plaintiff to settle its claim with respect to another portion of the policy;

- failing to promptly provide a reasonable explanation of the basis in law or fact for the denial of Plaintiff's claims;

- refusing to affirm or deny coverage within a reasonable time; and/or

- refusing to pay Plaintiff's claim without conducting a reasonable investigation.

Where statements were made by the Insurance Defendant, Plaintiff reasonably relied upon them. As a result of the foregoing conduct, which was and is the producing cause(s) of injury and damage to Plaintiff, Plaintiff has suffered damages including, without limitation, actual damages, economic damages, and consequential damages. Moreover, one or more of the foregoing acts or omissions were "knowingly" made, entitling Plaintiff to seek treble damages pursuant to the Insurance Code. The Insurance Defendant has also violated the Prompt Payment Act, and Plaintiff seeks 18% damages as a penalty, plus reasonable and necessary attorney's fees incurred as a result of these violations.

"**Common Law Bad Faith.**" Plaintiff re-alleges the foregoing paragraphs. The Insurance Defendant has refused to pay or delayed in paying a claim after liability has become reasonably clear. The Insurance Defendant has refused to pay, delayed in paying or offered grossly inadequate

7

and unconscionable sums to settle the claims submitted by Plaintiff.  This constitutes a breach of its common law duty of good faith and fair dealing' *i.e.*, it is acting in "bad faith."

Moreover, the Insurance Defendant and its agents have "investigated" and "adjusted" Plaintiff's claim in a malicious, intentional, fraudulent and/or grossly negligent fashion, and Plaintiff is entitled to extra-contractual damages, including exemplary damages.  Plaintiff has sustained serious damage to their property as a result of the Insurance Defendant's refusal to honor the Policy. The Insurance Defendant is well aware that its actions involve an extreme risk that Plaintiff will suffer financial damage as a result of its refusal to honor its obligations, yet it is consciously indifferent to Plaintiff's rights.  Plaintiff is entitled to recover its actual damages, consequential damages, punitive damages, and pre- and post-judgment interest.

## VII. CLAIMS AGAINST MICHAEL DEAN HARGRAVE

**Violations of the Texas Insurance Code.**  Plaintiff re-alleges the foregoing paragraphs. At all pertinent times Hargrave was engaged in the business of insurance as defined by the Texas Insurance Code. The acts and omissions of Hargrave constitute one or more violations of the Texas Insurance Code.  More specifically, Hargrave violated the Texas Insurance Code chapter 541, section 541.060 by, among other things:

- failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim with respect to which their liability has become reasonably clear;

- refusing to pay Plaintiff's claim without conducting a reasonable investigation.

The foregoing paragraphs are incorporated herein. The Insurance Defendant assigned the loss and the claim to Hargrave, who was at all pertinent times the agents of the Insurance Defendant, through both actual and apparent authority. The acts, representations and omissions of the Adjuster are attributed to the Insurance Defendant.

8

Despite having been assigned the claim, and despite being given authority and instructions to inspect, adjust and evaluate the claim, Hargrave failed and refused to adjust the claim properly, failed to fully inspect the property and the damages, failed to fully investigate the claim, failed to respond to requests for information from Plaintiff, failed to timely evaluate the claim, failed to timely estimate the claim, and, failed to timely and properly report to the Insurance Defendant and make recommendations to the Insurance Defendant.

Plaintiff provided information regarding the loss and the claim to Hargrave and provided full and complete access to the Community. Plaintiff provided sufficient information to Hargrave to adjust and evaluate the loss. Plaintiff made inquiries regarding the status of the loss and payment, yet Hargrave failed and refused to respond to the inquiries and failed to properly adjust the claim and the loss.  As a result, to this date, Plaintiff has not received full payment for the claim.

Hargrave misrepresented the true scope of covered losses at the Community and pushed a lowball estimate as significantly lower than what was due under the policy and laws of the state of Texas.

During the course of the claims investigation, Hargrave misrepresented the true scope of damage to the Community, failed to inspect and address all hail and wind damage to the Community, and failed to include all internal damage to buildings in estimates of covered losses.

The Adjuster failed to provide an estimate for areas of covered loss specifically pointed out to them.

The Adjuster misrepresented the proof of loss process and information regarding the claims process.

The Adjuster failed to educate the policyholder about benefits due under the policy and made misleading statements about code upgrade benefits due under the policy.

9

The actions of Hargrave were negligent, reckless, willful and intentional, and were the proximate and producing cause of damages to the Insured.

Where statements were made by Hargrave, Plaintiff reasonably relied upon them. As a result of the foregoing conduct, which was and is the producing cause(s) of injury and damage to Plaintiff, Plaintiff have suffered damages including, without limitation, actual damages, economic damages, and consequential damages. Moreover, one or more of the foregoing acts or omissions were "knowingly" made, entitling Plaintiff to seek treble damages pursuant to the Insurance Code.

Upon information and belief, Philadelphia relied solely on Hargrave's estimate and recommendation in making payment on Plaintiff's claim. Thus, Hargrave was responsible for scoping, adjusting, and estimating the claim. Hargrave's failure to properly scope and estimate the loss directly led to the underpayment of Plaintiff's claim. As a result of Hargrave's conduct, the Insurance Defendant significantly underpaid the claim. Hargrave's estimate failed to address all of the damage caused by the hail storm.

Plaintiff notified the insurer on multiple occasions that the covered damage and the condition of the damaged property necessitated additional repairs or complete replacement under the policy. On or about August 2, 2017, Hargrave in conjunction with JS Held, LLC ("JSH") created an estimate to repair Plaintiff's property that only included an allowance to repair portions of the covered damage. In addition, Hargrave unreasonably withheld from the estimate, allowances for reasonable and necessary costs to repair the covered damage such as Code Upgrades, Architectural and Engineering Fees and General Contractor's Overhead and Profit despite the fact that, at the time of the investigation and estimate, it was reasonably clear that Philadelphia was liable for these damages under the policy. In addition, Hargrave represented that the damage to the fences and gutters of numerous buildings did not warrant repair and omitted

10

these damages from the estimate despite the fact that, at the time of the investigation and estimate, it was reasonably clear that Philadelphia was liable for these damages under the policy. Each of these categories of damages was specifically presented to defendants by Plaintiff's contractors yet, though required by any reasonable review of the scope of the work and obviousness of the damage, they were omitted by Hargrave.

Hargrave retained the services of JSH in a pre-textual attempt to confirm his unreasonable conclusions and to convince Plaintiff that the scope and cost to repair the covered losses was much less than estimated by Plaintiff's contractor. He retained JSH knowing that JSH would provide a report Hargrave could use as a pretext for underpaying the claim, and knowing that the investigation JSH would perform and *did* perform was not reasonable. Following the pre-textual JSH investigation, Hargrave relayed his unreasonable conclusion to Philadelphia who acted on his recommendations when they underpaid Plaintiff's claim and issued their partial payment in February and August of 2017.

**Attorney's fees.** Plaintiff re-alleges the foregoing paragraphs. Plaintiff has been required to engage the services of the undersigned attorneys and have agreed to pay its attorneys a reasonable fee for services expended and to be expended in the prosecution of its claims against the Insurance Defendant and the Adjuster through the trial court and all levels of the appellate process. Plaintiff seeks the recovery of all of its attorney's fees and expenses.

With respect to all causes of action asserted herein, Plaintiff seeks the recovery of prejudgment and post-judgment interest.

## VIII. CLAIMS AGAINST CATTO & CATTO

Plaintiff re-alleges the foregoing paragraphs. Catto & Catto is Plaintiff's longstanding insurance agent and/or producer who sold Plaintiff the Policy. Following the loss at issue in this

11

suit, Catto & Catto interjected themselves into the claims handling process through its agents, John Cornelius, Brad Weberg and others and represented to Plaintiff that they were advising and representing Plaintiff's interests in the claim.  Plaintiff placed a special confidence in Catto & Catto as a result of their actions and representations.  Upon information and belief, at the same time Catto & Catto mislead Plaintiff that its interests were being looked after by Catto & Catto, Catto & Catto was communicating with Philadelphia regarding Plaintiff's claim.  The information and communications were not presented, conveyed or otherwise disseminated to Plaintiff or, if they were, the significance of the communications were represented as though Catto & Catto was actin with due regard for Plaintiff's interests.  Upon information and belief, Catto & Catto and Philadelphia were acting in concert to look to the best interests of themselves and not Plaintiff. Catto & Catto, although representing itself an advisor to Plaintiff on the claim, was actually looking out for its own financial interest, not Plaintiff's.

**Breach of Fiduciary Duty.**  Plaintiff re-alleges the foregoing paragraphs.  Catto & Catto breached the special relationship of trust with Plaintiff by acting in concert with Philadelphia to convince Plaintiff to accept the unreasonably low claim payment.  The disloyalty of Catto & Catto has damaged Plaintiff.

**Civil Conspiracy.**  Plaintiff re-alleges the foregoing paragraphs.  When committing the acts complained of herein, Philadelphia and Catto & Catto acted in combination to accomplish an unlawful purpose.  These Defendants had a meeting of the minds on the object of their course of action and one of the members carried out an overt act to further the object course of action.  The wrongful acts of the Defendants were, and are, the proximate cause of Plaintiff's injuries. Specifically, Catto & Catto misrepresented and downplayed the significance of the damage to Plaintiff.  During numerous meetings with Plaitniff, Catto & Catto undertook to convince Plaintiff

to accept the unreasonably low offers made by Philadelphia.  Upon information and belief, the information used by Catto & Catto came directly from communications with Philadelphia which neither Catto & Catto nor Philadelphia informed Plaintiff had taken place.  Both Catto & Catto and Philadelphia were aware of Catto & Catto's relationship of trust with Plaintiff and used that relationship to attempt to influence Plaintiff for their own benefit.

## IX. CONDITIONS PRECEDENT

All conditions precedent for Plaintiff to recover under the policy have been or will be met. All notices were timely and properly given to Defendants in such manner as to fully comply with the terms and conditions of the relevant insurance policy or other contracts and applicable law. In the alternative, Plaintiff alleges that as to any such terms, conditions, notices, or requests, Defendants waived them. Defendants are estopped from asserting them, and/or the Plaintiff substantially complied with them, or is excused. Plaintiff makes the same allegation of waiver or estoppel as to every defense or exclusion plead by Defendants, as to each claim for breach of contract or statutory violation as to Defendants.

In addition, as to any exclusion, condition, or defense pled by Defendants, Plaintiff would show that:

- The clear and unambiguous language of the policy provides coverage for damage to the Property caused by wind, hail and water damage and damages resulting therefrom;

- In the alternative, any other construction of the language of the policy is void as against public policy;

- Any other construction and its use by the Defendants violates the Texas Insurance Code section 541 et. seq. and is void as against public policy;

- Any other construction is otherwise void as against public policy, illegal, and violates state law and administrative rule and regulation.

13

- In the alternative, should the Court find any ambiguity in the policy, the rules of construction of such policy mandate the construction and interpretation urged by Plaintiff;

- In the alternative, Defendants are judicially, administratively, or equitably estopped from denying Plaintiff's construction of the policy coverage at issue;

- In the alternative, to the extent that the wording of such policy does not reflect the true intent of all parties thereto, Plaintiff pleads the doctrine of mutual mistake requiring information.

## X. JURY DEMAND

Plaintiff request that a jury be convened to try the factual issues in this action.

## XI. REQUEST FOR DISCLOSURE

Pursuant to the Texas Rules of Civil Procedure 194, Plaintiff request that Defendants provide the information required in a Request for Disclosure.

## XII. REQUEST FOR PRODUCTION TO PHILADELPHIA INDEMNITY INSURANCE COMPANY

1.   Produce Philadelphia's complete claim file for Plaintiff's Property relating to or arising out of any damage which occurred.

2.   Produce all emails, notes, and other forms of communication between Philadelphia, its agents, Adjusters, employees, or representatives and Engle Martin, Hargrave and/or their agents, adjusters, representative or employees relating to, mentioning, concerning or evidencing the Plaintiff's Community which are the subject of this suit.

3.   Produce all emails, notes, and other forms of communication between Philadelphia, its agents, Adjusters, employees, or representatives and Catto & Catto and/or their agents, adjusters, representative or employees relating to, mentioning, concerning or evidencing Plaintiff's Community which is the subject of this suit.

## XIII. REQUEST FOR PRODUCTION TO MICHAEL DEAN HARGRAVE

1.      Produce your complete claim file for Plaintiff's Property relating to or arising out of any damage which occurred.

2.      Produce all emails, notes, and other forms of communication between you and Philadelphia and/or their agents, adjusters, representative or employees relating to, mentioning, concerning or evidencing Plaintiff's Community which are the subject of this suit.

3.      Produce all emails, notes, and other forms of communication between you and Catto & Catto and/or their agents, adjusters, representative or employees relating to, mentioning, concerning or evidencing Plaintiff's Community which is the subject of this suit.

## XIV. REQUEST FOR PRODUCTION TO CATTO & CATTO

1.      Produce your complete file for Plaintiff's Property relating to or arising out of any damage which occurred.

2.      Produce all emails, notes, and other forms of communication between Catto & Catto, and/or their agents, representative or employees and Philadelphia and/or their agents, adjusters, representative or employees relating to, mentioning, concerning or evidencing Plaintiff's Community which are the subject of this suit.

## PRAYER

WHEREFORE, Plaintiff seeks the following relief:

A.      The Court's declaration that the Policy provides coverage for the damage to the home, less only a deductible;

B.      Alternatively, a ruling that the Policy is ambiguous and must be interpreted in favor of coverage and in favor of Plaintiff;

15

C.    Damages against the Insurance Defendant for breach of contract, including actual damages, consequential damages, attorneys' fees, pre- and post-judgment interest, other litigation expenses and costs of court;

D.    Penalty in the amount of 18% damages for violations of the Prompt Payment Act;

E.    Damages against the Insurance Defendant and the Adjuster, jointly and severally, for other violations of the Texas Insurance Code, including without limitation economic damages, actual damages, consequential damages, treble damages, pre- and post-judgment interest, other litigation expenses and costs of court and reasonable and necessary attorneys' fees;

F.    Damages against the Insurance Defendant and the Adjuster, jointly and severally, for breach of the duty of good faith and fair dealing, including actual damages, consequential damages, punitive damages, other litigation expenses and costs of court, and pre- and post-judgment interest;

G.    Damages against the Insurance Defendant and Catto & Catto, jointly and severally, for civil conspiracy to commit breach of the duty of good faith and fair dealing, including actual damages, consequential damages, punitive damages, other litigation expenses and costs of court, and pre- and post-judgment interest;

H.    Damages against Catto & Catto, for breach of fiduciary duty, including actual damages, consequential damages, punitive damages, other litigation expenses and costs of court, and pre- and post-judgment interest; and

I.    Plaintiff also seeks all other financial relief and rulings to which they may be legally or equitably entitled.

Respectfully submitted,

**GRAVELY & PEARSON, L.L.P.**
425 Soledad, Suite 600
San Antonio, Texas 78205

16

Telephone:  (210) 472-1111
Facsimile:  (210) 472-1110

By: _____
MARC E. GRAVELY
State Bar No. 00787582
mgravely@gplawfirm.com
JONATHAN C. LISENBY
State Bar No. 24072889
jlisenby@gplawfirm.com

**ATTORNEYS FOR PLAINTIFF**

17

# 68881

| IN RE: | § | IN THE DISTRICT COURT OF |
|---|---|---|
| | § | |
| BEXAR H A I L | § | |
| | § | BEXAR COUNTY, TEXAS |
| COMMERCIAL | § | |
| | § | |
| CLAIM LITIGATION | § | CIVIL JUDICIAL DISTRICT COURTS |

## STANDING PRETRIAL ORDER CONCERNING
## BEXAR COUNTY COMMERCIAL HAIL CLAIMS

This order applies to pretrial matters in commercial property insurance cases filed in the District Courts of Bexar County, Texas that involve insurance disputes arising from the hail storms occurring in Bexar County in April and May of 2016. The purpose of this order is to expedite pretrial matters, discovery and mediation in order to minimize court costs and litigation expenses.

This order shall be posted on the Bexar County District Clerk website and shall be attached to the Original Petition of applicable cases. All attorneys and parties should endeavor to notify others about this order.

Parties seeking to be excused from any part of this order must set a hearing and request relief from the court.

**AUTOMATIC ABATEMENT** – The filing of an original answer by the commercial insurance carrier shall trigger an immediate and automatic abatement. The case shall remain abated until 30 days after a mediation impasse.

The abatement period will apply to all court ordered deadlines and Rule 190 discovery deadlines. The abatement period will not apply to the deadlines in this order or to any statutory deadline, interest or penalties that may apply under any statutory code or law. The parties may send written discovery during the abatement time period, however, the responses and objections to those discovery requests will not be due until 30 days after the end of the abatement period.

**MEDIATION** – The parties shall agree to a mediator and to a mediation date. An Agreed Mediation Order, in the form attached, shall be filed with the court within 120 days after the answer is filed.

Within 15 days of an unsuccessful mediation, the parties will submit a proposed Agreed Scheduling Order to the court.

**DISCOVERY** – Within 120 days of the filing of an answer by the commercial insurance carrier, the parties will use their best efforts to exchange information and documentation pertaining to the commercial property, including the following: expert reports, engineering reports, estimates of damage or repairs; contents lists for contents damage claim(s); photographs; repair receipts or invoices; the non-privileged portions of the commercial insurance carrier and adjusting company's claims file (including all claim diary notes, activity logs, loss notes and email correspondence regarding the insurance claim); payment ledger, payment log and/or proof of payment from the insurance carrier; a copy of the insurance policy in effect at the time of the respective storm claim(s); and the non-privileged portions of the underwriting file. If the insurance carrier is not in possession of the adjusting company's/adjuster's claims file, and the adjusting company/adjuster is not named as a party in the lawsuit and represented by separate counsel, then the insurance carrier shall seek the adjusting company's claims file and use their best efforts to exchange this information within the 120 day time period. The insurance carrier is also ordered to notify

# 68881

# 68881

the independent adjusting company that all emails, activity notes and loss diary notes pertaining to the hail storm claim in litigation shall be preserved and not destroyed. Finally, a privilege log will also be produced in accordance with the Texas Rules of Civil Procedure for any redactions or privileges asserted. Within 180 days of the filing of an answer by the commercial insurance carrier, the parties will use their best efforts to exchange accounting and financial documentation and other information pertaining to any claims for business interruption, loss of business income, lost profits, inventory or food loss (provide list with values), lost business expense, accounts receivable and any other business loss claim.

Any expert reports, engineering reports, contractor estimates or any other estimates of damages or repairs obtained pursuant to this order for settlement, demand, or mediation purposes and exchanged prior to mediation shall be for mediation purposes only and shall be considered confidential, except that any estimates and/or reports that are part of the claims file, which were obtained or prepared during the claims handling, shall not be considered confidential under this paragraph. However, if a consultant, whose report is produced for mediation, is designated as a retained testifying expert and does not produce a subsequent report for use at trial, the mediation report shall not remain confidential.

Confidential reports and estimates are only confidential for the lawsuit in which they are being used. Confidential expert reports designated for mediation purposes shall be returned to the providing party within 14 days of a written request. Such reports shall not be discoverable or admissible at trial or any hearing. If the party procuring the report designates the expert to testify, such party shall have the right to prevent discovery or testimony by the expert regarding the mediation report and any opinions therein, provided that a subsequent report is produced. The procuring party may use data such as measurements and photographs without waiving this privilege. Nothing herein shall prohibit the use of those reports and estimates in any subsequent insurance claims or lawsuits involving the same commercial insurance carrier.

Once a mediation date and mediator are agreed to by all parties, the commercial insurance carrier shall be permitted to inspect the property involved in the lawsuit (as soon as practicable) prior to mediation. If mediation is unsuccessful, the commercial insurance carrier and other defendants may re-inspect the property with the same, new or additional experts pursuant to the Texas Rules of Civil Procedure.

Signed on November 30, 2016

Michael E. Mery
Michael Mery, Judge
37th District Court

Stephani A. Walsh
Stephani Walsh, Judge
45th District Court

Antonia Arteaga, Judge
57th District Court

David A. Canales, Judge
73rd District Court

# 68881

68881

John D. Gabriel, Jr., Judge
131st District Court

Renée Yanta, Judge
150th District Court

Laura Salinas, Judge
166th District Court

Cathleen Stryker, Judge
224th District Court

Peter Sakai, Judge
225th District Court

Richard Price, Judge
285th District Court

Sol Casseb III, Judge
288th District Court

Karen H. Pozza, Judge
407th District Court

Larry Noll, Judge
408th District Court

Gloria Saldaña, Judge
438th District Court

3

68881

# 68881

## AGREED MEDIATION ORDER

Pursuant to the Standing Pretrial Order Concerning Bexar County Commercial Hail Claims, the parties agree to the following mediation date and mediator:

Date: _____

Mediator: _____

The court, hereby, approves and orders the above date and mediator as agreed by the parties.

Each side shall pay an equal portion of the mediation fee.

All parties must have in attendance a representative with full authority to enter into a final settlement agreement. The following shall be personally in attendance at the mediation until excused by the mediator:

1.   An attorney of record for each party, unless the party is self-represented.

2.   All individual parties, either plaintiff or defendant, except that individual defendant adjusters and insurer employee defendants are not ordered to attend so long as a representative with full authority to negotiate and settle on their behalf is present.

3.   A representative of each non-individual party, unless the parties agree otherwise in writing.

Signed and entered on _____, 2016.

_____
Judge Presiding

11/30/2016 VOL 4655 PG 1819

4    68881

# Exhibit 4B

CAUSE NO. 2017-CI-16586

| | | |
|---|---|---|
| THE ARMY RETIREMENT RESIDENCE FOUNDATION– SAN ANTONIO, INC. D/B/A ARMY RESIDENCE COMMUNITY, | § § § § § | IN THE DISTRICT COURT |
| *Plaintiff,* | § § § | |
| VS. | § § | BEXAR COUNTY, TEXAS |
| PHILADELPHIA INDEMNITY INSURANCE COMPANY, MICHAEL DEAN HARGRAVE and CATTO & CATTO, INC. d/b/a CATTO & CATTO, LLP d/b/a CATTO & CATTO BENEFITS GROUP, LLP d/b/a CATTO & CATTO, | § § § § § § § § § | |
| *Defendants.* | § § | 438TH JUDICIAL DISTRICT |

### PHILADELPHIA INDEMNITY INSURANCE COMPANY'S ORIGINAL ANSWER

TO THE HONORABLE JUDGE OF THIS COURT:

**Philadelphia Indemnity Insurance Company**, a Defendant in the above-styled and numbered cause ("Defendant"), files this Original Answer in response to Plaintiff's Original Petition, and respectfully shows the Court as follows:

### I.

### GENERAL DENIAL

As permitted by Rule 92 of the Texas Rules of Civil Procedure, Defendant enters a general denial of all the matters pled by Plaintiff, Superior Home Health Services, LLC ("Plaintiff"), and requests that the Court require Plaintiff to prove all

---

of its charges and allegations by a preponderance of the evidence as required by the Constitution and laws of the State of Texas.

## II.

### AFFIRMATIVE DEFENSES

By way of affirmative defense, if the same should be necessary, and as permitted by Rule 94 of the Texas Rules of Civil Procedure, Defendant asserts the following as to the claims and causes of action brought against it by Plaintiff:

1.      With regard to the claims Plaintiff has brought for violation of provisions of chapter 541 of the Texas Insurance Code, Defendant alleges that Plaintiff is barred from asserting such claims by reason of Plaintiff's failure to provide written notice of such claims at least 60 days before filing suit, as required by section 541.154(b) of the Insurance Code.

2.      As to Plaintiff's claims for violation of provisions of chapter 541 of the Insurance Code and for breach of the common law duty of good faith and fair dealing, Philadelphia alleges that a bona fide dispute exists, precluding liability and Plaintiff's recovery of damages under these extra-contractual theories. *U.S. Fire Ins. Co. v. Williams*, 955 S.W.2d 267, 268 (Tex. 1997); *see Transp. Ins. Co. v. Moriel*, 879 S.W.2d 10, 17 (Tex. 1994).

3.      Pleading further and in the alternative, Defendant states that Plaintiff's claims and causes of action based upon alleged misrepresentations by Defendant and/or reliance by Plaintiff, including "misrepresenting to Plaintiff a material fact or policy provision relating to coverage at issue" all fail as a matter of

law because the language of an insurance policy controls and the insured has a duty to read and be familiar with the terms of his own insurance policy. *Heritage Manor of Blaylock Props., Inc. v. Petersson*, 677 S.W.2d 689, 691 (Tex. App.—Dallas 1984, writ ref'd n.r.e.); *Howard v. Burlington Ins. Co.*, 347 S.W.3d 783, 792 (Tex. App.—Dallas 2011, no pet.); *Garrison Contractors, Inc. v. Liberty Mut. Ins. Co.*, 927 S.W.2d 296, 300 (Tex. App.—El Paso 1996). Further, an insured is bound to the terms of the policy whether he reads it or not. *Howard v. Burlington Ins. Co.*, 347 S.W.3d at 792 (citing *Manion v. Security Nat'l Ins. Co.*, No. 13-01-248-CV, 2002 WL 34230861, *3 (Tex. App.—Corpus Christi Aug. 15, 2002, no pet.)); *Ruiz v. Gov't Employees Ins. Co.*, 4 S.W.3d 838, 841 (Tex. App.—El Paso 1999, no pet.).

4.      Pleading further and in the alternative, Defendant asserts that under Texas law, coverage under a policy of insurance cannot be created by waiver or estoppel. *Ulico Cas. Co. v. Allied Pilots Assn.*, 262 S.W.3d 773, 778-79 (Tex. 2008) (citing *Farmers Tex. County Mut. Ins. Co. v. Wilkinson*, 601 S.W.2d 520 (Tex. Civ. App.—Austin 1980, writ ref'd n.r.e.)).

5.      Pleading further and in the alternative, Defendant asserts that if Plaintiff's damages, if any, resulted from both covered and non-covered causes of loss, Plaintiff bears the burden of segregating the damages which resulted from covered causes of loss. *See Nat'l Union Fire Ins. of Pittsburgh, Pa. v. Puget Plastics Corp.*, 735 F.Supp.2d 650, 669 (S.D. Tex. 2010); *All Saints Catholic Church v. United Nat'l Ins. Co.*, 257 S.W.3d 800 (Tex. App.—Dallas 2008, no pet.); *Feiss v. State Farm Lloyds*, 392 F.3d 802, 807 (5th Cir. 2004).

6.      Pleading further and in the alternative, Defendant asserts the defenses of waiver and estoppel as provided under applicable law.

7.      Pleading further and in the alternative, Defendant alleges that discovery in this case may show that Plaintiff failed to mitigate its damages as required by applicable law and Plaintiff's claims and causes of action may therefore be barred in whole or in part.

8.      Pleading further, and in the alternative, Defendant alleges that the discovery in this case may show that Plaintiff failed to mitigate its damages as required under the terms and provisions of the policy of insurance Defendant issued to Plaintiff, and that any damages Plaintiff suffered by such failure to mitigate are therefore barred.

9.      Pleading further and in the alternative, Defendant asserts the coverage language, exclusions, limitations and definitions in the policy of insurance Defendant issued to Plaintiff under number PHPK1359399, including but not limited the following:

    a.   *Property Coverage Form* (PI-ULT-007 11.98), modified by *Texas Changes* endorsement (form PI-ULT-043 01.01):

        **A.   Coverage**

        We will pay for direct physical "loss" to Covered Property caused by or resulting from any of the Covered Causes of Loss.

        **B.   Exclusions**

        See the Causes of Loss Form.

        **E.   Loss Conditions**

        The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions:

        **3.   Duties In The Event Of Loss Or Damage**

---

a.  You must see that the following are done in the event of "loss" to Covered Property:

\*   \*   \*

(2)  Give us prompt notice of the "loss" or damage. Include a description of the property involved.

(3)  As soon as possible, give us a description of how, when and where the "loss" or damage occurred.

(4)  Take all reasonable steps to protect the Covered Property from further damage by and of the Covered Causes of Loss.  If feasible, set the damaged property aside and in the best possible order for examination.  Also, keep a record of your expenses for emergency and temporary repairs, for consideration in settlement of the claim.  This will not increase the Limit of Insurance.

(5)  At our request, give us complete inventories of the damaged and undamaged property. Include quantities, cost, values, and amount of **"loss"** claimed.

(6)  As often as may be reasonably required, permit us to inspect the property and records proving the **"loss"**.

Also permit us to take samples of damaged and undamaged property for inspection, testing, and analysis, and permit us to make copies from your books and records.

(9)  Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

(10) Cooperate with us in the investigation or settlement of the claim.

b.  We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must signed.

4.  **Loss Payment**

a.  In the event of "loss" to Covered Property covered by this Coverage form, at our option, we will either:

(1)  Pay the value of lost or damaged property;

    (2) Pay the cost of repairing or replacing the lost or damaged property;

    (3) Take all or any part of the property at an agreed or appraised value; or

    (4) Repair, rebuild or replace the property with other property of like kind and quality.

**5.   Coverage Extensions**

Except as otherwise provided, the following Coverage Extensions apply to property in or the **"buildings"** described in the Declarations or within 1,000 feet of the described premises....

**j.   Ordinance or Law**

If a Covered Cause of Loss occurs to a covered **"building"**, we will pay for:

    (1) Loss to the undamaged portion of the **"building"** caused by enforcement of any ordinance or law that:

        (a) Requires the demolition of parts of the same property not damaged by a Covered Cause of Loss; and

        (b) Regulates the construction or repair of **"buildings"** or establishes zoning or land use requirements at the described premises.

    This coverage is included within the Limit of Insurance applicable to the covered **"buildings"** shown in the UltimateCover Program Declarations.

    (2) The cost to demolish and clear the site of undamaged parts of the property caused by enforcement of building, zoning or land use ordinance or law.

    The most we will pay for such demolition costs if $300,000 in any one occurrence.

    (3) We will pay for the increased cost to repair, rebuild or construct the property caused by enforcement of building, zoning or land use ordinance or law. If the property is repaired or rebuilt, it must be intended for similar occupancy as the current property, unless otherwise required by zoning or land use ordinance or law.

    However, we will not pay for the increased cost of construction if the **"building"** is not repaired or replaced.

The most we will pay for such increased cost of construction is $300,000 in any one occurrence.

Insurance under this Coverage Extension applies only with respect to an ordinance or law that is in effect at the time of **"loss"**....

7.  **Valuation**

We will determine the value of Covered Property in the event of "loss" as follows:

a.  At replacement cost (without deduction for depreciation) as of the time of "loss", except as provided in b., c., d., e., f., g., and h. below.

    (1) We will not pay more for "loss" on a replacement costs basis than the least of:

        (a) The Limit of Insurance applicable to the lost or damaged property;

        (b) The cost to replace the lost or damaged property with other property:

            (i) Of comparable material and quality; and

            (ii) Used for the same purpose; or

        (c) The amount you actually spend that is necessary to repair or replace the lost or damaged property.

    (2) We will not pay on a replacement cost basis for any "loss".

        (a) Until the lost or damaged property is actually repaired or replaced; and

        (b) Unless the repairs or replacement are made as soon as reasonably possible after the "loss".

If the repairs or replacement are not made as soon as reasonably possible after the "loss", the value of the property will be actual cash value.

b.  *Causes of Loss Form* (PI-ULT-008 11.98), modified by *Limitations on Fungus, Wet Rot, Dry Rot and Bacteria* endorsement (form PI-ULT-072 (10/10)):

    **A.  Covered Causes of Loss**

    Covered Causes of Loss means Risks of Direct Physical Loss unless the "loss" is:

      1.  Excluded in Section B., Exclusions; or

   **2.** Limited in Section C., Limitations;

   that follow.

**B. Exclusions**

   **2.** We will not pay for "loss" caused by or resulting from any of the following:

   **d.** **(1)** Wear and tear;

   **(2)** Rust, corrosion, decay, deterioration, spoilage, contamination, hidden or latent defect or any quality in property that causes it to damage or destroy itself.

   **3.** We will not pay for "loss" caused by or resulting from any of the following.  But if "loss" by a Covered Cause of Loss results, we will pay for that resulting "loss".

   **c.** Faulty, inadequate or defective:

   **(2)** Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

   **(3)** Materials used in repair, construction, renovation or remodeling; or

   **(4)** Maintenance.

   Of part or all of any property on or off the described premises.

**C. Limitations**

   **1.** We will not pay for "loss" to:

   **c.** The interior of any "buildings", or to personal property in "buildings", caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless:

   **(1)** The "buildings" first sustain damage by a Covered Cause of Loss to their roof or walls through which the rain, snow, ice, sand or dust enters....

c. *Texas Changes* endorsement (form PI-ULT-043 01.01):

**A. Legal Action Against Us**

No one may bring a legal action against us under this Coverage Part unless:

**a.** There has been full compliance with all of the terms of this Coverage Part....

d. *Commercial Property Conditions* endorsement (CP 00 90 07 88):

---

### H.  POLICY PERIOD, COVERAGE TERRITORY

Under this Coverage Part:

1.  We cover loss or damage commencing

    a.   During the policy period shown in the Declarations....

e.   *Windstorm or Hail Percentage Deductible* endorsement (PI-ULT-018 11.98):

### COVERAGE SUMMARY

| Premises No. | Bldg. No. | Windstorm or Hail Deductible Percentage (enter 1%, 2% or 5%) |
|---|---|---|
| 0001 | 0003 | 1% |
| 0001 | 0004 | 1% |
| 0001 | 0006 | 1% |
| 0001 | 0007 | 1% |
| 0001 | 0010 | 1% |
| 0001 | 0011 | 1% |
| 0001 | 0012 | 1% |
| 0001 | 0013 | 1% |
| 0001 | 0013 | 1% |
| 0001 | 0014 | 1% |
| 0001 | 0015 | 1% |
| 0001 | 0016 | 1% |
| 0001 | 0017 | 1% |
| 0001 | 0018 | 1% |
| 0001 | 0019 | 1% |
| 0001 | 0025 | 1% |
| 0001 | 0025 | 1% |
| 0001 | 0026 | 1% |
| 0001 | 0027 | 1% |
| 0001 | 0028 | 1% |
| 0001 | 0029 | 1% |
| 0001 | 0030 | 1% |
| 0001 | 0031 | 1% |
| 0001 | 0032 | 1% |
| 0001 | 0033 | 1% |
| 0001 | 0034 | 1% |
| 0001 | 0035 | 1% |
| 0001 | 0036 | 1% |
| 0001 | 0037 | 1% |
| 0001 | 0037 | 1% |

The Windstorm or Hail Deductible, as shown in the Schedule, applies to direct physical "loss" to Covered Property, caused by or resulting from Windstorm or Hail, regardless of any other cause or event that contributes concurrently or in any sequence to the "loss" or damage. If "loss" from a covered weather condition other than Windstorm or Hail occurs, and that "loss" would not have occurred but for the Windstorm or Hail such "loss" shall be considered to be caused by

---

Windstorm or Hail and therefore part of the Windstorm of Hail occurrence.

With respect to Covered Property at a location identified in the Schedule, no other deductible applies to Windstorm or Hail.

The Windstorm of Hail Deductible applies whenever there is an occurrence of Windstorm or Hail.

As used in this endorsement the terms "specific insurance" and "blanket insurance" have the following meanings. Specific insurance covers each item of insurance (for example, each building or personal property in a building) under a separate Limit of Insurance. Blanket insurance covers two or more items of insurance (for example a building and personal property in that building or two buildings) under a single Limit of Insurance. Items of insurance and corresponding Limit(s) of insurance are shown in the Declarations.

**Windstorm or Hail Deductible Clause**

**A.  All Policies**

1.  A deductible is calculated separately for, and applies separately to:

    a.  Each building, if two or more buildings sustain loss or damage;

    b.  The building and to personal Property in that building, if both sustain loss or damage;

    c.  Personal property at each building, if personal property at two or more buildings sustains loss or damage;

    d.  Personal Property in the open.

2.  We will not pay for "loss" until the amount of "loss" exceeds the applicable Deductible. We will then pay the amount of "loss" in excess of that Deductible up to the applicable Limit of Insurance, after any reduction required by any of the following:

    a.  Coinsurance Condition

    b.  Agreed Value Option Coverage

    c.  Reporting Endorsement

3.  For property covered under the Coverage Extension for Newly Acquired or Constructed: When we determine the amount, if any, that we will pay for "loss", we will deduct an amount equal to a percentage of the value(s) of the property at time of "loss". The applicable percentage for Newly Acquired or Constructed Property is the highest percentage shown in the Schedule for any described premises.

---

* * *

**C. Calculation of the Deductible - Blanket Insurance**

    **1.   Property Not Subject to Reporting Endorsement**

When we determine the amount, if any, that we will pay for "loss", we will deduct an amount equal to 1%, 2% or 5% (as shown in the Schedule) of the value(s) of the property that has sustained "loss". The value(s) to be used are those shown in the most recent Statement of Values on file with us.

f.   *Windstorm Or Hail Percentage Deductible* endorsement (manuscript form PI-MANU-1 (01/00)):

This endorsement modifies the PI-ULT-018 Windstorm Or Hail Percentage Deductible Form.

'As respects to only the frame structures with a 1% wind/hail deductible, a minimum % wind/hail deductible of $250,000 applies'.

The Windstorm or Hail Deductible, as shown in the Schedule, applies to direct physical "loss" to Covered Property, caused by or resulting from Windstorm or Hail, regardless of any other cause of event that contributes concurrently or in any sequence to the "loss" or damage. If "loss" from a covered weather condition other than Windstorm or Hail occurs, and that "loss" would not have occurred but for the Windstorm or Hail, such "loss" shall be considered to be caused by Windstorm or Hail and therefore part of the Windstorm or Hail occurrence.

With respect to Covered Property at a location identified in the Schedule, no other deductible applies to Windstorm or Hail.

The Windstorm or Hail Deductible applies whenever there is an occurrence of Windstorm or Hail. . . .

g.   *Multiple Deductible Form (Fixed Dollar Deductibles)* endorsement (form PI-ULT-089 (06.05)):

**SCHEDULE***

The Deductibles applicable to any one occurrence are shown below:

| Prem. No. | Bldg. No. | Deductible | Covered Causes of Loss |
|---|---|---|---|
| 0001 | 0001 | 50000 | (1) |
| 0001 | 0001 | 50000 | (1) |
| 0001 | 0002 | 50000 | (1) |
| 0001 | 0002 | 50000 | (1) |
| 0001 | 0003 | 50000 | (2) |

---

PHILADELPHIA INDEMNITY INSURANCE COMPANY'S ORIGINAL ANSWER     PAGE 11

| | | | |
|---|---|---|---|
| 0001 | 0004 | 50000 | (1) |
| 0001 | 0004 | 50000 | (1) |
| 0001 | 0005 | 50000 | (2) |
| 0001 | 0006 | 50000 | (2) |
| 0001 | 0007 | 50000 | (2) |
| 0001 | 0008 | 50000 | (1) |
| 0001 | 0008 | 50000 | (1) |
| 0001 | 0009 | 50000 | (2) |
| 0001 | 0010 | 50000 | (2) |
| 0001 | 0011 | 50000 | (2) |
| 0001 | 0012 | 50000 | (2) |
| 0001 | 0013 | 50000 | (2) |
| 0001 | 0013 | 50000 | (2) |
| 0001 | 0014 | 50000 | (2) |
| 0001 | 0015 | 50000 | (2) |
| 0001 | 0016 | 50000 | (2) |
| 0001 | 0017 | 50000 | (2) |
| 0001 | 0018 | 50000 | (2) |
| 0001 | 0019 | 50000 | (2) |
| 0001 | 0020 | 50000 | (1) |
| 0001 | 0021 | 50000 | (1) |
| 0001 | 0022 | 50000 | (1) |
| 0001 | 0023 | 50000 | (1) |
| 0001 | 0024 | 50000 | (1) |
| 0001 | 0025 | 50000 | (2) |
| 0001 | 0025 | 50000 | (2) |
| 0001 | 0026 | 50000 | (2) |
| 0001 | 0027 | 50000 | (2) |
| 0001 | 0028 | 50000 | (1) |
| 0001 | 0028 | 50000 | (1) |
| 0001 | 0029 | 50000 | (1) |
| 0001 | 0029 | 50000 | (1) |
| 0001 | 0030 | 50000 | (2) |
| 0001 | 0031 | 50000 | (2) |
| 0001 | 0032 | 50000 | (2) |
| 0001 | 0033 | 50000 | (2) |
| 0001 | 0034 | 50000 | (2) |
| 0001 | 0035 | 50000 | (2) |
| 0001 | 0036 | 50000 | (2) |
| 0001 | 0037 | 50000 | (2) |
| 0001 | 0037 | 50000 | (2) |

\*    Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

\*\*   For each Deductible listed in this Schedule, enter the number corresponding to the Covered Cause(s) of Loss to which that Deductible applies (or enter the description):

**(1)** All Covered Causes of Loss

**(2)** All Covered Causes of Loss **except** those listed separately

**(3)** Water Damage

**(4)** Lightning

**(5)** Windstorm or Hail

---

**(6)** Theft

**(7)** "Ice Damming"

The following is added to the DEDUCTIBLE section:

A.  In the event that loss or damage occurs to Covered Property at more than one building location as a result of one occurrence, the largest applicable deductible for that Covered Cause of Loss, shown in the Schedule above or in the Declarations, will apply.

B.  The terms of this endorsement do not apply to any Earthquake Deductible or to any Windstorm or Hail Percentage Deductible.

h.  *Limitations on Fungus, Wet Rot, Dry Rot and Bacteria* endorsement (form PI-ULT-072 (10/10)):

**A. Coverage**

**1.**  We will pay for "loss" or damage by "fungus," wet or dry rot or bacteria that is the result of fire or lightning.

**2.   a.**  We will also pay for loss or damage by "fungus," wet or dry rot or bacteria that is the result of one or more of the following causes that occurs during the policy period. Coverage applies only if all reasonable means were used to save and preserve the property from further damage at the time of and after that occurrence.

  **(1)**  A "specified cause of loss" other than fire or lightning;

  **(2)**  Water that backs up or overflows from a sewer, drain or sump; or

  **(3)**  Water under the ground surface pressing on, or flowing or seeping through:

    **(a)**  Foundations, walls, floors or paved surfaces;

    **(b)**  Basements, whether paved or not;

    **(c)**  Doors, windows or other openings; or

  **(4)**  "Flood," if the Flood Endorsement applies to the affected premises.

  **b.**  The term loss or damage as used in Item 2.a. means:

  **(1)**  Direct physical "loss" or damage to Covered Property caused by "fungus," wet or dry rot or bacteria, including the cost of removal of the "fungus," wet or dry rot or bacteria;

  **(2)**  The cost to tear out and replace any part of the building or other property as needed to gain access to the "fungus," wet or dry rot or bacteria; and

---

     **(3)** The cost of testing performed after removal, repair, replacement or restoration of the damaged property is completed, provided there is a reason to believe that "fungus," wet or dry rot or bacteria are present.

  **3.** The amount we will pay for coverage described in 2.a. above is limited as described in B. Limits of Insurance and C. Additional Conditions – Business Income and/or Extra Expense.

**B. Limits of Insurance**

  **1.** The most we will pay for all "loss" or damage for coverage described in A.1. above is the Limit of Insurance for Covered Property shown in the Declarations.

  **2.**   **a.** The most we will pay for all loss or damage for coverage described in A. 2. above is limited to $15,000:

     **(1)** Regardless of the number of claims arising out of all occurrences which take place in a 12 month period, starting with the beginning of the present annual policy period; and

     **(2)** Even if the "fungus," wet or dry rot or bacteria continues to be present or active, or recurs in a later policy period.

    **b.** The $15,000 Limit of Insurance is included within, and is not in addition to, the applicable Limit of Insurance for any Covered Property.

10.     Pleading further and in the alternative, Defendant asserts the other coverage language, exclusions, limitations, definitions and defenses reflected in the policy of insurance Defendant issued to Plaintiff.

11.     Pleading further and in the alternative, Defendant would show that Plaintiff's damages, if any, are capped by the limits reflected for such amounts alleged in the policy of insurance Defendant issued to Plaintiff.

12.     Pleading further and in the alternative, Defendant pleads the applicability of the excessive demand doctrine, which precludes Plaintiff from

recovering the fees and expenses of its attorney in this action. *See Findlay v. Cave*, 611 S.W.2d 57, 58 (Tex. 1981).

**P<small>RAYER</small>**

BASED ON THE FOREGOING, Defendant Philadelphia Indemnity Insurance Company, having fully answered, prays that upon final hearing and trial, the claims and causes of action Plaintiff Superior Home Health Services, LLC has brought against such Defendant be dismissed with prejudice, that Plaintiff take nothing by its claims and causes of action, and that such Defendant obtain such other relief and further relief to which it may be justly entitled.

Respectfully submitted,

**KANE RUSSELL COLEMAN LOGAN PC**

By:_____*/s/   William R. Pilat*_____
    William R. Pilat
    State Bar No. 00788205
    E-mail:  wpilat@krcl.com
    Andrew J. Mihalick
    State Bar No. 24046439
    Email:  amihalick@krcl.com
5051 Westheimer Road, 10th Floor
Houston, Texas 77056
Telephone:  713-425-7400
Facsimile:  713-425-7700

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 8, 2017, a true and correct copy of the foregoing *Original Answer* was served upon all other counsel of record, as listed below, by filing this instrument with the electronic service provider for the Bexar County District Court:

Marc E. Gravely
Jonathan C. Lisenby
GRAVELY & PEARSON, L.L.P.
425 Soledad, Suite 600
San Antonio, Texas 78205

/s/   *William R. Pilat*
William R. Pilat

# Exhibit 4C

CAUSE NO. 2017-CI-16586

| | | |
|---|---|---|
| THE ARMY RETIREMENT RESIDENCE FOUNDATION– SAN ANTONIO, INC. D/B/A ARMY RESIDENCE COMMUNITY, | § § § § § | IN THE DISTRICT COURT |
| *Plaintiff,* | § § | |
| VS. | § § | BEXAR COUNTY, TEXAS |
| PHILADELPHIA INDEMNITY INSURANCE COMPANY, ET AL., | § § § § | |
| *Defendants.* | § | 438TH JUDICIAL DISTRICT |

## DEFENDANT PHILADELPHIA INDEMNITY INSURANCE COMPANY'S NOTICE OF REMOVAL TO FEDERAL COURT

TO THE HONORABLE JUDGE OF THIS COURT:

PLEASE TAKE NOTICE that pursuant to federal law, **Philadelphia Indemnity Insurance Company**, a Defendant in the above-numbered and entitled cause, has filed with the Clerk of the United States District Court for the Western District of Texas, San Antonio Division, a *Notice of Removal*, a copy of which is attached to and filed with this Notice as **Exhibit "A,"** and that this action is removed to the United States District Court for the Western District of Texas for trial as of this date, September 8, 2017. This Court is respectfully requested to take no further action in this matter, unless and until such time as the action may be remanded by order of the United States District Court.

Respectfully submitted,

**KANE RUSSELL COLEMAN LOGAN PC**

By: _/s/   William R. Pilat_
  William R. Pilat
  State Bar No. 00788205
  Email: wpilat@krcl.com
  Andrew J. Mihalick
  State Bar No. 24046439
  Email: amihalick@krcl.com
 5051 Westheimer Road, Suite 1000
 Houston, Texas 77056
 Telephone:  713-425-7400
 Facsimile:  713-425-7700

  ATTORNEYS FOR DEFENDANT PHILADELPHIA
  INDEMNITY INSURANCE COMPANY

## CERTIFICATE OF SERVICE

  I certify that on September 8, 2017, a true and correct copy of the foregoing *Notice of Removal to Federal Court* was forwarded to all other counsel of record, as listed below, via e-Filing with the electronic service provider for the Collin County District Courts:

  Marc E. Gravely
  Jonathan C. Lisenby
  GRAVELY & PEARSON, L.L.P.
  425 Soledad, Suite 600
  San Antonio, Texas 78205

     _/s/   William R. Pilat_
     William R. Pilat

# Exhibit 4D

CAUSE NO. <u>2017-CI-16586</u>

| | | |
|---|---|---|
| THE ARMY RETIREMENT RESIDENCE | § | IN THE DISTRICT COURT |
| FOUNDATION – SAN ANTONIO, INC. | § | |
| D/B/A ARMY RESIDENCE COMMUNITY | § | |
| | § | |
| v. | § | |
| | § | 438TH JUDICIAL DISTRICT |
| PHILADELPHIA INDEMNITY | § | |
| INSURANCE COMPANY, MICHAEL DEAN | § | |
| HARGRAVE AND CATTO & CATTO, INC. | § | |
| D/B/A CATTO & CATTO, LLP D/B/A | § | |
| CATTO & CATTO BENEFITS GROUP, LLP | § | |
| D/B/A CATTO & CATTO | § | BEXAR COUNTY, TEXAS |

**PLAINTIFF'S SPECIAL EXCEPTIONS TO DEFENDANT**
**PHILADELPHIA INDEMNITY INSURANCE COMPANY'S ORIGINAL ANSWER**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Plaintiff, THE ARMY RESIDENCE FOUNDATION – SAN ANTONIO, INC. D/B/A ARMY RESIDENCE COMMUNITY ("Plaintiff") and files this, its Special Exceptions to Defendant, PHILADELPHIA INDEMNITY INSURANCE COMPANY'S ("Philadelphia" or "Defendant") Original Answer, and specially excepts to Defendant's Original Answer as follows:

**I.**

Plaintiff specially excepts to Defendant's Original Answer, paragraph 2, wherein it alleges that a bona fide dispute exists, precluding liability and Plaintiff's recovery of damages under Chapter 541 of the Insurance Code and the common law duty of good faith and fair dealing. Such pleading is so general and vague that it fails to provide any factual basis that a bona fide dispute exists. Defendant should be ordered to replead with particularity to give Plaintiff fair notice or such affirmative defense should be stricken.

II.

Plaintiff specially excepts to Defendant's Original Answer, paragraph 4, wherein it alleges that the coverage under a policy of insurance cannot be created by waiver or estoppel.   Such pleading is general, vague, and wholly devoid of any factual basis and fails to fairly apprise Plaintiff of how Defendant's assertion of law pertains to the coverage provided under the policy of insurance issued to Plaintiff by Defendant.   Defendant should be ordered to replead with particularity to give Plaintiff fair notice or such defense should be stricken.

III.

Plaintiff specially excepts to Defendant's Original Answer, paragraph 5, wherein it alleges that *if* Plaintiff's damages resulted from both covered and non-covered causes of loss, Plaintiff bears the burden of segregating the damages which resulted from covered causes of loss. Defendant provides no factual basis for such allegation, and said allegation is so general, vague and speculative that it fails to fairly apprise Plaintiff of what non-covered cause or causes allegedly contributed or caused the damage complained of by Plaintiff in this case.   Defendant should be ordered to replead to give Plaintiff fair notice or such affirmative defense should be stricken.

IV.

Plaintiff specially excepts to Defendant's Original Answer, paragraph 6, wherein it pleads the affirmative defenses of waiver and estoppel for the reason that said allegation is so general, vague and non-specific it fails to fairly apprise the Plaintiff of the facts underlying such pleading. By reason thereof, Plaintiff cannot prepare its case for the trial of this lawsuit and such affirmative defense should be stricken.

V.

Plaintiff specially excepts to Defendant's Original Answer, paragraph 7, wherein it alleges that Plaintiff's claims and causes of action may be barred in whole or in part *if* discovery in this case shows that Plaintiff failed to mitigate its damages for reason that said allegation is so general, vague and speculative that it fails to fairly apprise the Plaintiff of which damages were allegedly not mitigated and how Plaintiff failed to mitigate them.  Defendants should be ordered to replead to give Plaintiff fair notice or such affirmative defense should be stricken.

VI.

Plaintiff specially excepts to Defendant's Original Answer, paragraph 8, wherein it alleges that any damages Plaintiff suffered by failure to mitigate are barred *if* discovery in this case shows that Plaintiff failed to mitigate its damages for reason that said allegation is so general, vague and speculative that it fails to fairly apprise the Plaintiff of which damages were not mitigated and how Plaintiff failed to mitigate them.  Defendants should be ordered to replead to give Plaintiff fair notice or such affirmative defense should be stricken.

VII.

Plaintiff specially excepts to Defendant's Original Answer, paragraph 9, wherein it asserts coverage language, exclusions, limitations and definitions in the policy of insurance Philadelphia issued to Plaintiff, including but not limited to, several provisions quoted within the answer. Defendant provides no factual basis for such allegation, and said allegation is so general, vague and speculative that it fails to fairly apprise the Plaintiff of which specific causes of action or damages are allegedly barred or limited by the policy provisions listed and fails to apprise the Plaintiff of what specific damages or damaged building components Defendant alleges were not covered damages based on provisions of the policy, including those provisions cited.

Furthermore, within paragraph 9, Defendant references the entirety of the insurance policy at issue ("including but not limited to") and asserts every provision, term conditions and exclusion of the policy.  Defendant provides no factual basis for such allegation, and said allegation is so general, vague and speculative that it fails to fairly apprise the Plaintiff of which specific policy provisions, terms, conditions or exclusions Defendant contends limits Plaintiff's damages. Defendant should be ordered to replead to give Plaintiff fair notice or such affirmative defense should be stricken.

## VIII.

Plaintiff specially excepts to Defendant's Original Answer, paragraph 10, wherein it asserts "other coverage language, exclusions, limitations, definitions and defenses reflected in the policy of insurance Defendant issued to Plaintiff."   Within paragraph 10, Defendant references the entirety of the insurance policy at issue and asserts every provision, term, condition and exclusion of the policy.  Defendant provides no factual basis for such allegation, and said allegation is so general, vague and speculative that it fails to fairly apprise the Plaintiff of which specific policy provision, term condition or exclusion Defendant contends limits or bars Plaintiff's causes of action or damages.  Defendant should be ordered to replead to give Plaintiff fair notice or such affirmative defense should be stricken.

## IX.

Plaintiff specially excepts to Defendant's Original Answer, paragraph 11, wherein it alleges Plaintiff's damages are capped by the limits reflected for such amounts in the policy of insurance Defendant issued to Plaintiff. Defendant provides no factual basis for such allegation, and said allegation is so general, vague and speculative that it fails to fairly apprise Plaintiff of which specific policy provision allegedly limits Plaintiff's damages or which specific measure or

category of damages are allegedly limited.  Defendant should be ordered to replead to give Plaintiff fair notice or such affirmative defense should be stricken.

X.

Plaintiff specially excepts to Defendant's Original Answer, paragraph 9, including sections (e) and (g), wherein it alleges various specific deductibles apply to Plaintiff's claims for damages.  Defendant provides no factual basis for such allegation, and said allegation is so general and vague that it fails to fairly apprise Plaintiff of what deductible(s) apply to the amounts already paid to Plaintiff and how deductibles were calculated.  Defendant should be ordered to replead with particularity to give Plaintiff fair notice or such allegation should be stricken.

XI.

Plaintiff specially excepts to Defendant's Original Answer, paragraph 12, wherein it alleges that the excessive demand doctrine precludes Plaintiff from recovering the fees and expenses of its attorney in this action.  Defendant provides no factual basis for such allegation, and said allegation is so general and vague that it fails to fairly apprise Plaintiff of how its demand was allegedly unreasonable or made in bad faith.  Defendant should be ordered to replead with particularity to give Plaintiff fair notice or such allegation should be stricken.

WHEREFORE, PREMISES CONSIDERED, Plaintiff, THE ARMY RETIREMENT RESIDENCE FOUNDATION – SAN ANTONIO, INC. D/B/A ARMY RESIDENCE COMMUNITY, request this Honorable Court to order Defendant to replead as requested above.

Respectfully submitted,

GRAVELY & PEARSON, LLP
425 Soledad, Suite 600
San Antonio, Texas 78205
(210) 472-1111 Telephone
(210) 472-1110 Facsimile

By: _____
Marc E. Gravely
State Bar No. 00787582
mgravely@gplawfirm.com
Jonathan C. Lisenby
State Bar No. 24072889
jlisenby@gplawfirm.com

**ATTORNEYS FOR PLAINTIFF**


## CERTIFICATE OF SERVICE

This is to certify that on the 8th day of September, 2017, a true and correct copy of the above and foregoing was served on the following persons via e-service, pursuant to Rules 21 and 21a of the TRCP.

William R. Pilat
Andrew J. Mihalick
**KANE RUSSELL COLEMAN LOGAN PC**
5051 Westheimer Road, 10th Floor
Houston, Texas 77056
Facsimile: 713-425-7700
E-mail: wpilat@krcl.com
Email: amihalick@krcl.com
*Attorneys For Defendant Philadelphia Indemnity Insurance*

_____
Marc E. Gravely